**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02437-WJM

DELOY J. ABEYTA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

THIS MATTER is before the Court on review of the Commissioner's final decision that denied Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is REVERSED and the matter is REMANDED for an immediate award of benefits.

## I. BACKGROUND

Plaintiff Deloy Abeyta ("Plaintiff") was born on February 27, 1962 and is currently 49 years old. (Admin. Record ("R.") at 404.) Plaintiff earned his GED in 1984 and has past relevant work experience as a cook and a laborer. (R. at 73, 78.) He claims he has been disabled since May 7, 2001 due to a compressed disk, two pinched nerves,

severe whiplash, plate screws in his right elbow, and arthritis in his knees and hands. (R. 72, 81.) Plaintiff has a history of alcohol abuse. (R. at 393.)

Plaintiff filed applications for Social Security disability benefits on September 17, 2003. (R. at 390.) These claims were denied by an Administrative Law Judge ("ALJ") on October 28, 2005 following a hearing. (R. at 18-29.) The Appeals Council denied Plaintiff's request for review on March 3, 2006. (R. at 1-14.) Plaintiff sought review by the District Court for the District of Colorado. (R. at 390.) Before the Court could review the matter, however, the Commissioner requested a voluntary remand. (R. at 416-20.) In the meantime, Plaintiff filed a subsequent application for disability benefits on April 12, 2006. (R. at 390.) Both applications were consolidated for review by a new ALJ with the instruction to (1) give further consideration to the treating and examining source opinions; (2) obtain evidence from a medical expert regarding Plaintiff's impairment; (3) reassess Plaintiff's maximum residual functional capacity ("RFC"); and (4) obtain supplemental evidence from a vocational expert. (R. at 423-25.)

Plaintiff's claims were heard by the ALJ on September 5, 2007. (R. at 923-69.) Plaintiff, medical expert Dr. Robert Pelc ("Dr. Pelc"),[1] and vocational expert Douglas Prutting ("Prutting") appeared and testified at the hearing. (R. at 923.) Plaintiff was 45 years old at the time of the remand hearing. (R. at 404.)

On November 19, 2007, the ALJ issued a written decision in accordance with the

---

[1] Dr. Pelc appeared and provided testimony via telephone. (R. at 925.)

Commissioner's five-step sequential evaluation process.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 7, 2001. (R. at 393.) At step two, he found that Plaintiff suffered from the following severe impairments: alcohol abuse disorder, degenerative disc disease of the cervical and lumbar spine, tendinitis of the bilateral shoulders, fibromyalgia, osteoarthritis of the left knee, depression, and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet any of the impairments or combination of impairments listed in the social security regulations. (R. at 397) At step four, the ALJ found that when Plaintiff engages in alcohol abuse, Plaintiff lacks the RFC to sustain any level of work activity, but that if Plaintiff stopped the substance abuse, he would have the RFC to perform less than the full range of unskilled light exertional work activity.[3] (R. at 398-99.) Given this RFC, the ALJ found that Plaintiff could not perform his past relevant work, which involved exertional demands exceeding Plaintiff's RFC. (R. at 404.) At step five, the ALJ found that if Plaintiff were to stop the substance use, there are significant numbers of jobs in the national economy which Plaintiff can perform. (*Id.*) Accordingly, the ALJ found that (1) Plaintiff would not be disabled if he

---

[2]The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] Where alcoholism or drug addiction is a contributing factor material to the disability determination, an individual cannot be considered disabled. *See* 20 C.F.R. § 404.1535; *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

stopped the substance use; (2) Plaintiff's substance use disorder is a contributing factor material to the determination of disability; and therefore (3) Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (R. at 405.) The Appeals Council denied Plaintiff's request for review on August 19, 2009. (R. at 374.) Plaintiff then filed this action seeking review of the Commissioner's decision.

On appeal, Plaintiff argues that the ALJ made several errors:

(1)   The ALJ did not properly assess the materiality of drug abuse and alcoholism;

(2)   The vocational expert's testimony is not sufficient to support the ALJ's finding of ability to perform work at step five;

(3)   The ALJ did not have a proper basis for rejecting the opinions of the treating and examining physicians; and

(4)   The ALJ failed to state the weight given to the opinion of the state agency psychiatrist. (Pl's Opening Br., ECF No. 13 at 3.)

## II. DISCUSSION

**A.   Standard of Review**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not

substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**B.     Materiality of Drug and Alcohol Abuse**

Because this issue is dispositive, the Court first addresses whether the ALJ erred in his determination that Plaintiff is not disabled within the meaning of the Act by failing to properly assess the materiality of Plaintiff's drug and alcohol abuse ("DAA").

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

Under the relevant agency regulations, the key factor the Commissioner must examine in determining whether DAA is a contributing factor material to the disability determination is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol. *Drapeau*, 255 F.3d at 1214 (citing 20 C.F.R. § 416.935(b)(1)). "[T]he ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether

any or all of plaintiff's remaining limitations would be disabling." *Id.*

If the ALJ finds that the claimant would still be found disabled if he or she stopped abusing alcohol, "then the alcohol abuse is not a contributing factor material to the finding of disability." *Drapeau*, 255 F.3d at 1214-1215 (citing § 416.935(b)(2)(ii)). "If, however, the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability." *Id.* at 1215 (citing § 416.935(b)(2)(I)).

Shortly after the law was amended to provide that a claimant could not be disabled by drug and alcohol abuse alone, the Social Security Administration sent out a "teletype" on applying the new statutory provision. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). "This teletype stated that '[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the record, a finding of 'not material' would be appropriate." *Id.* "In other words, the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found not to be a contributing factor material to the disability determination." *Id.*

"[T]he Commissioner's teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination." *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) (emphasis in original). Finally, the "teletype instructs that

where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if [he] stopped using drugs or alcohol, an ALJ should 'find that DAA is not a contributing factor material to the determination of disability.' " *Id.* at 624 (citation omitted).

Here, Plaintiff's records indicate a significant history of DAA. (R. at 22, 147-48.) At one point in time, Plaintiff reported that he drank ½ gallon of whiskey per week. (R. at 22.) Although Plaintiff claims to have stopped drinking in 2004, a hospital record indicates he came in smelling of alcohol 2006. (R. at 933-34.) While his alcohol use has apparently decreased, Plaintiff has continued to use addictive narcotics such as Vicodin since at least 2001. (R. at 147-48, 155.) There is no indication in the record that Plaintiff has ceased taking Vicodin. At the time of the remand hearing, Plaintiff admitted to smoking marijuana two to five times per month even though it is illegal for him to do so. (R. at 935.)

In his decision, the ALJ stated that when Plaintiff "engages in alcohol abuse, the [Plaintiff] lacks the residual functional capacity to sustain any level of work activity throughout a regular eight hour work day or forty hour work week." (R. at 398.) The ALJ further stated that when Plaintiff "engages in alcohol abuse, a finding of disability is appropriate within the Medical-Vocational Framework . . . ." (*Id.*) However, the ALJ determined that if Plaintiff "stopped the substance use, the [Plaintiff] would have the residual functional capacity to perform less than the full range of unskilled light exertional work activity . . . ." (R. at 399.)

In explaining his determination, the ALJ noted inconsistencies between Plaintiff's assertion that he stopped drinking alcohol in 2004 and records indicating binge drinking in 2006. (R. at 400.) The ALJ further pointed out Plaintiff's marijuana use, overuse of narcotics, and drug-seeking behavior. (R. at 401.) The ALJ stated that he gave careful consideration to Dr. Pelc's opinion, but gave it little weight with regard to Dr. Pelc's assessment that Plaintiff would be more severely limited in interacting with others if sober. (R. at 401-02.) Instead, the ALJ appears to have relied on information provided by Spanish Peaks Mental Health Center showing significant psychological functioning after participating in an alcohol abuse treatment program for one year. (R. at 402.) The ALJ noted that the mental health assessments from examining doctors, Dr. Richard Madsen ("Dr. Madsen") and Dr. Jose Vega ("Dr. Vega"), indicated Plaintiff was unable to sustain regular work activity. (R. at 403.) However, the ALJ discounted these opinions because they did not provide opinions on Plaintiff's ability when sober. (*Id.*)

In its order remanding Plaintiff's application to the ALJ, the Appeals Council specifically directed the ALJ to obtain testimony from a medical expert on "whether drug and alcohol abuse is a factor material to a finding of disability, whether the claimant would be disabled absent the use of alcohol/drugs, including determining if the claimant has had any periods of abstinence from substance abuse . . . ." (R. at 425.)

In his testimony, Dr. Pelc, the Commissioner's medical expert, told the ALJ:

> There is frankly no period of sustained remission that is recorded in this record that would allow me to separate out the effects of drug and alcohol use. He's testified and I think the record reflects that there's been at least some continuation of some drug and, at this point, it appears to be marijuana. And to

> be able to accurately reflect a period of comparison there would be a necessity in my opinion for a episode of what's referred to as full sustained remission. That would mean that the person would be without use of any substance, drug or alcohol substance, for a period of at least 12 months. And there is nothing in the record that allows me to believe that that has occurred.

(R. at 956.) When pressed further, Dr. Pelc again stated, "I would not be able to separate because I do not believe, as [I] said, that there's a period of full sustained remission that would allow sufficient opportunity to delineate the effects solely of the drug and alcohol use." (*Id.*)

In providing his opinion, Dr. Pelc discussed the information relied upon by the ALJ from Spanish Peaks Medical Health Center. Dr. Pelc distinguished the Center's assessment of Plaintiff's functional capacity by noting that the Center did not give consideration of Plaintiff's cognitive issues. (R. at 954.) Dr. Pelc then noted that Dr. Vega and Dr. Madsen, however, considered Plaintiff's cognitive issues in formulating their opinions. (*Id.*)

Based on a review of the record, Dr. Pelc provided his expert opinion that Plaintiff has an adjustment disorder, a substance addiction disorder, and a learning disorder. (R. at 952.) He concluded that Plaintiff's psychological limitations are moderate as opposed to mild or none. (R. at 954.) Dr. Pelc further clarified that Plaintiff would have moderate difficulty (1) handling simple, work-related judgments; (2) appropriately interacting with the general public; (3) appropriately interacting with supervisors; (4) appropriately interacting with co-workers; and (5) responding to changes in routine work settings. (R. at 955.)

In 2004, Dr. Madsen examined Plaintiff and concluded Plaintiff's "ability to do work-related activities is impaired. His level of cognitive function is impaired." (R. at 229.) In Dr. Madsen's opinion, Plaintiff's ability to interact with others in a work setting would be limited, and therefore implied that Plaintiff was unable to work. (R. at 229, 403.) Dr. Madsen made note of Plaintiff's alcohol use, including Plaintiff alleging that he began drinking alcohol at age 9. (R. at 228.) Dr. Madsen also noted Plaintiff's use of Vicodin. (*Id.*) Dr. Madsen's opinion did not give an opinion on Plaintiff's abilities aside from the DAA.

Dr. Vega also examined Plaintiff in 2004, and came to a similar opinion. Dr. Vega noted Plaintiff's alcohol and drug use. (R. at 319-21, 326.) In Dr. Vega's opinion, Plaintiff's DAA affected his psychological and cognitive abilities. (R. at 326.) Likewise, Dr. Vega did not hypothesize or otherwise give an opinion of Plaintiff's psychological or cognitive abilities without alcohol or drugs. Based on a Wechsler Adult Intelligence Score Third Edition test, Dr. Vega determined Plaintiff had low thinking and verbal reasoning skills and would have a hard time keeping up with his peers. (R. at 321.) In Dr. Vega's opinion, Plaintiff could handle only simple tasks such as reading simple instructions and doing simple math. (R. at 323.) Dr. Vega's opinion stated that Plaintiff has a number of behavioral issues that would need to be resolved prior to seeking employment, including pain management, anger management, impulse control, and problem solving. (R. at 327.) Dr. Vega concluded that Plaintiff would have a difficult time finding a job. (R. at 327.)

In 2004-2005, Plaintiff attended alcohol recovery treatment at Spanish Peaks

Mental Health Center ("Center"). (R. at 402.) At discharge, clinician Toni Christensen ("Christensen") noted Plaintiff's "life functioning improved significantly during his treatment period." (R. at 518.) "The most significant improvement he made was to start attending AA meetings several times/week." (*Id.*) Christensen noted Plaintiff's connection to fellow attendees of the AA meetings and improved relationships with his children. (*Id.*) Throughout Christensen's notes, there is mention that Plaintiff seems to have ended his use of alcohol, though there is no mention of drug use. Additionally, the Center's records indicate Plaintiff is better able to function in society, but the records, as Dr. Pelc mentioned, do not address Plaintiff's cognitive abilities, which would also affect Plaintiff's ability to engage in gainful activity. The ALJ seemed to rely heavily on the Center's records relating to Plaintiff in determining that Plaintiff is not disabled were he to quit abusing drugs and alcohol. (R. at 402.)

Despite a showing of improved social functioning in the Center's records, the Court finds that Christensen's observations do not provide substantial evidence for the ALJ's finding that Plaintiff's psychological and cognitive issues are not severe in the absence of substance abuse. The Court also finds that the ALJ's conclusion that Plaintiff's DAA was a contributing factor material to the determination of disability is also not supported by any other evidence. As the Tenth Circuit made clear in *Salazar*, where *medical* examiners cannot project what limitations would remain if the Plaintiff stopped using drugs or alcohol, the ALJ should find that Plaintiff's DAA is not a contributing factor material to the disability determination. *Salazar*, 468 F.3d at 623. The same is true when from the record it is not possible to separate the mental

11

restrictions and limitations imposed by Plaintiff's DAA and the other mental disorders shown by the record.  *McGoffin*, 288 F.3d at 1253.

Thus, based on the evidence provided by examining medical professionals and the medical expert, the ALJ should have found that Plaintiff's DAA was not a contributing factor material to the determination of disability.  *Id.*, *Salazar*, 468 F.3d at 624.  There being no medical evidence in the record separating out the effects of DAA from other impairments, the ALJ should then have determined that Plaintiff's psychological and cognitive impairments were severe and that Plaintiff is disabled.  The ALJ's decision to reject the testimony of Dr. Pelc, and to substitute his own "medical" opinion that Plaintiff would suffer from no mental impairment in the absence of DAA is clear error, and must be reversed.

### *Reverse and Award Benefits*

On the basis of the ALJ's failure to properly assess the materiality of Plaintiff's DAA to the disability determination, the Court must either reverse the ALJ's decision and remand for an immediate award of benefits, or remand for further fact-finding.  The Court has the discretion to award benefits when a remand for additional fact-finding would not serve a useful purpose "but would merely delay the receipt of benefits." *Salazar*, 468 F.3d at  626 (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)).

Plaintiff filed for benefits in September 2003.  Plaintiff's case has gone through the remand process once, with specific instructions for additional fact-finding and

consideration of medical testimony on the issue of DAA materiality. The ALJ has already once disregarded this directive, and there is no reason for the Court to believe a second remand would end in a different result. The time has come to bring Plaintiff's 8-year legal ordeal to an end. Accordingly, the Court finds that a remand in this case for additional fact-finding would not serve any useful purpose, and additionally finds there is no need for further proceedings other than to remand for an award of benefits.[4]  *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 746 (10th Cir.1993).

### III.  CONCLUSION

Based upon its review of the record in this case, the Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act is not supported by substantial evidence. Accordingly, the Commissioner's decision that Plaintiff is not disabled is REVERSED. The Court hereby ORDERS that this matter be REMANDED to the Commissioner for an immediate award of full benefits as of May 7, 2001.

Dated this 24th day of June, 2011.

BY THE COURT:

William J. Martínez
United States District Judge

---

[4] Because the Court is reversing and remanding for an immediate award of benefits based on a finding that Plaintiff's DAA is not a contributing factor material to the disability determination and that Plaintiff suffers from mental impairments causing him to be disabled within the meaning of the Act, the Court does not address any of Plaintiff's remaining arguments on appeal.